No. 14,633.

HILL v. HILL.
(107 P. [2d] 597)

Decided September 23, 1940. Rehearing denied November 25, 1940.

Mr. PAUL W. LEE, Mr. GEO. H. SHAW, Mr. DONALD C. McCREERY, Mr. WILLIAM A. BRYANS, III, Mr. GEORGE E. McCONLEY, JR., for plaintiff in error.

Messrs. SAUTER & SANDHOUSE, Mr. SHERMAN E. WALROD, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THE legal problem here presented for our consideration concerns payment of alimony for the support of a wife and her minor daughter, the latter having now attained her majority. It appears from the record that December 20, 1924, Ruth Irene Hill, plaintiff in error here, procured a decree of divorce from defendant in error, Harold C. Hill, in which decree alimony payments were ordered in accordance with a formal stipulation executed by the parties. Subsequently, in July, 1936, after some modifications as to the alimony payments, the wife filed in the trial court a "motion for delinquent

support money and that an execution issue therefor." In this motion, as amended, she prayed judgment for $5646.00, and attorney fees. The court entered judgment in her favor for $2,080.00, which included an attorney fee of $200. Mrs. Hill, being dissatisfied with the amount of the award, brings the case here for review of that judgment, asking that it be reversed "or that said cause be * * * remanded to the court below with instructions to make its findings, judgment and decree in favor of the plaintiff and against the defendant in the full amount claimed by plaintiff in error to be due her by defendant in error."

The supplemental order which formed the basis for the "amended motion for delinquent support money" was issued April 25, 1928, and increased the amount defendant was to pay plaintiff from $75 a month to $110 a month until further order of the court. Defendant complied with the supplemental order until March, 1932, when he reduced the payments to $50, without obtaining any modification of the court order as it then stood. The original stipulation provided also "that the child may be educated to the point of a collegiate degree in some suitable institution to be selected by the wife, defendant will upon showing that the same is needed advance any necessary money needed." Defendant, answering the allegations of the motion, asserted that the parties had agreed to the reduced payments of $50 a month for the support of the minor daughter after March, 1932, because of the then existing economic conditions which made it impossible for defendant to continue paying the decreed amount.

Defendant presented in evidence three letters (exhibits 1, 2 and 3) which, he contended, set forth the alleged reduction agreement, the pertinent portions of which follow: Exhibit 1. "Dear Mr. [C.D.] Walrod (a local attorney in Holyoke). * * * I have an accurate account and have estimated that he has not sent anywhere near the amount I agreed to accept temporarily

which was $50 a month. * * * Ruth T. Hill." Exhibit 2. "Dear Mr. [C.D.] Walrod. * * * He wrote the following summer asking to have the allowance lowered to $50 monthly temporarily which I agreed to accept until he could resume the regular payments. * * * R. Hill." Exhibit 3. "Dear Mr. [C.D.] Walrod. Received your letter and also a check from Dr. Hill for $35. He agreed to send $50, Mr. Walrod, which is little enough at Dorothy's age. Please see that I get the difference in amount and $50 in the future. Dottie is not well and is quite an expense. * * *."

Defendant, who is a physician, owned and operated a small hospital in Holyoke, Colorado, from which, during the decade of the twenties, he derived a substantial income, but beginning with the year 1930 his net income decreased and was, as he testified, as follows: 1930— $4,043.58; 1931—$1,716.22; 1932—$1,599.10. He stated that his income for the year 1928, when the supplemental order was entered, was $7,428.46. His income for the years 1934, 1935 and 1936, averaged approximately $3,100 a year. Following the divorce, defendant married again. One child was born of this second marriage and another child was adopted.

Counsel for plaintiff summarize their assignments of error in three statements: (1) Plaintiff had a vested right in the payments fixed by the court for the daughter in 1928 until her majority, which occurred January 31, 1937. (2) The letters from plaintiff to the attorney were privileged and should not have been admitted in evidence, and without them there was lacking proof of any agreement to accept reduced payments. (3) Judgment was erroneous under any theory of the case.

█ 1. It appears to us that counsel for plaintiff entertain the erroneous idea that this is a case where, assuming plaintiff may have had a vested right to accrued delinquent payments for alimony and support money for the daughter, the court was without power or authority to reduce those payments and have its

order operate retroactively. It may be that the cases upon which they rely to sustain their position in this behalf are authority for that rule, but that is not the situation here confronting us. The question is: May the parties themselves agree to the payment of a lesser amount than that fixed by the decree? We know of no rule which precludes parties who are sui juris from entering into such a contract, and, while the court is not necessarily bound by the agreement, if its terms are fair and no fraud attends its execution, it may be recognized by the court. In a recent case we had occasion to consider a somewhat similar situation where a trust agreement had been entered into between divorced persons, and we held that the court could not modify it without the consent of the parties. However, we quoted with approval the following from 17 Am. Jur. 495, section 649: "She and her husband may agree in a proper case touching the amount of such sum and the manner of its payment, subject to the approval of the court as to its validity in good morals and as conformable to public policy, and in further consideration of the status and condition of the parties relating to the question of its fairness and equability of adjustment." *Hall v. Hall,* 105 Colo. 227, 238, 97 P. (2d) 415. We think this statement covers the question involved in the case at bar.

2. Under the circumstances which developed at the trial, it was not error to admit defendant's exhibits 1, 2 and 3, as allegedly violating the provisions of paragraph 2, section 9, chapter 177, '35 C.S.A., which reads in part as follows: "An attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment." In the first place, there is doubt if the attorney, to whom the letters were addressed by plaintiff, was employed in a professional capacity, as she had retained other counsel to appear for her at the last court hearing. It is in evidence that Walrod never received any

remuneration, although she offered to pay him. Plaintiff specifically requested him to take up the matter of delinquent payments with defendant. He complied with her request and showed the letters to defendant. Defendant testified relating to the agreement, the efforts of the attorney, and said that he had read the letters. When plaintiff was being cross-examined, she said: "If you have any letters that I have written, it might refresh my memory." Whereupon, she was handed the letters and admitted they were in her handwriting. At least two well recognized principles of law remove the cloak of privilege from these letters: (a) "Communications made to an attorney for the purpose of being conveyed by him to others are stripped of the idea of a confidential disclosure, and, therefore, are not privileged." 28 R.C.L. 563; *Moran v. Thurman,* 127 Kan. 688, 275 Pac. 160; *Green v. Fuller,* 159 Wash. 691, 294 Pac. 1037; *Ferguson v. McBean,* 91 Cal. 63, 27 Pac. 518. (b) When the plaintiff took the witness stand and asked that the letters be produced in order that she might refresh her memory from them, she impliedly gave her consent to their introduction and waived the privilege, if any there were. *Fearnley v. Fearnley,* 44 Colo. 417, 98 Pac. 819.

3. We think the amount awarded plaintiff was eminently fair. It appears that the court was satisfied that the parties had reached an understanding and that the agreement to accept $50 a month was voluntary on the part of plaintiff. He computed the amount for the months for which no alimony had been paid, and upon that basis found defendant to be in arrears in the amount of $110. In addition, he found that defendant had agreed to provide for a college education for the daughter; that she had attended college two years; and that the mother expended $1,200 more than she had received from defendant for this period, which sum he allowed as a part of the judgment. The court also found a necessary expenditure of $570 for medical expenses for the daughter,

which also was included, making a total of $1,880, which with the $200 allowed for attorney fees is the amount of the judgment entered.

Upon a consideration of the whole record we do not feel there was any abuse of discretion on the part of the trial judge.

Judgment affirmed.

Mr. Chief Justice Hilliard and Mr. Justice Burke concur.